# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 04 CR 661 |
| SAMI KHOSHABA LATCHIN, | ) ) Judge Rebecca R. Pallmeyer |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Defendant Sami Khoshaba Latchin, an Iraqi citizen residing in Des Plaines, Illinois, has been charged in a three-count superseding indictment with making false statements in connection with his application for U.S. citizenship in violation of 18 U.S.C. § 1001 (Count One); conspiracy to act as an unregistered agent of a foreign government in violation of 18 U.S.C. § 951(a) (Count Two); and acting as an unregistered agent of a foreign government in violation of 18 U.S.C. § 951(a) (Count Three). Latchin moves to dismiss Count Three as impermissibly vague, duplicitous and barred in part by the statute of limitations. Alternatively, Latchin seeks a bill of particulars pursuant to FED. R. CRIM. P. 7(f). For the reasons set forth here, the motion to dismiss is denied but the motion for a bill of particulars is granted.

## BACKGROUND

The superseding indictment alleges that between 1993 and at least July 2002, Latchin acted as an agent of the Government of Iraq without notifying the United States Attorney General as required by 18 U.S.C. § 951(a), and conspired with "others known and unknown to the Grand Jury" to act as an unregistered foreign agent. (SI, Count 2 ¶¶ 2, 4, Count 3 ¶ 2.)[1] According to the indictment, a committee of senior officers and directors with the Iraqi Intelligence Service ("IIS"), the foreign intelligence arm of the Iraqi government, created a program to "plant" IIS agents

---

[1] The Superseding Indictment is cited as "SI Count __ ¶ __."

overseas to support the strategic interests of the IIS and the Iraqi government. The IIS committee selected Latchin for placement in the United States as a "sleeper" intelligence agent. In that role, Latchin was "tasked by the IIS" to emigrate to the United States, find employment, and obtain U.S. citizenship. Latchin was not to conduct any intelligence activity for a period of five years while he assimilated into his community. Thereafter, he was to provide intelligence information to the IIS and Iraqi government in exchange for monetary compensation. (*Id.* Count 1 ¶ 1(b), Count 2 ¶¶ 5-8.)

In support of the conspiracy, Latchin emigrated to the United States in May 1993 and settled in Des Plaines, Illinois. (*Id.* Count 2 ¶ 11(a).) Several months later on January 16, 1994, Latchin started traveling to various overseas locations to meet his IIS "handler" and to receive payment for his intelligence services. (*Id.* Count 2 ¶ 11(e).) In that regard, Latchin traveled to Romania in January 1994 and made two trips to Bulgaria on May 26, 1996 and January 25, 1997, respectively. (*Id.* Count 2 ¶ 11(e) - (g).)

On August 5, 1998, Latchin submitted an Application for Naturalization (INS Form N-400) to the Immigration and Naturalization Service, United States Department of Justice ("INS"). (*Id.* Count 1 ¶ 2.) On July 22, 1999, Latchin appeared before an INS examiner for an interview concerning his Application for Naturalization. (*Id.* Count 1 ¶ 3.) Count One of the superseding indictment alleges that during that INS interview, Latchin knowingly made false statements in order to become a United States citizen. Specifically, Latchin (1) failed to disclose his membership and affiliation with the Baath Party, a political party in the Middle East, including Iraq; (2) falsely stated that he was employed solely by Service Service, Inc. and Huntleigh USA, failing to disclose his employment by the IIS; and (3) claimed that he traveled overseas in January 1994, May 1996, and January 1997 for "vacations," when in reality he was meeting his IIS handler and receiving payment for his intelligence services. (*Id.* Count 1 ¶¶ 1(a), 1(b), 4.) Shortly after his INS interview, on August 16, 1999, Latchin obtained naturalization as a U.S. citizen. (*Id.* Count 2 ¶ 11(d).)

2

Over the next few years, Latchin continued to support the conspiracy and to act as an unregistered agent by contacting or attempting to contact his IIS handlers "via telephonic communication from Des Plaines, Illinois to Baghdad, Iraq" on December 3, 1997; on May 26, 1998; on seven different occasions between August 9 and September 9, 1998; on three different occasions between October 9 and 10, 1998; on 30 different occasions between June 8 and July 26, 2001; and on six different occasions between March 14 and May 7, 2002. (*Id.* Count 2 ¶¶ 11(h) - (j), 11(l), 11(o), 11(q).) Latchin also met with his IIS handler and received payment for his intelligence services during trips to Tunisia on September 12, 1998; to various countries in Europe, including Germany and Spain, on October 1, 2000 and July 14, 2002; and to Jordan on January 6 and July 28, 2001. (*Id.* Count 2 ¶¶ 11(k), 11(m) - (n), 11(p), 11(r).)

On July 21, 2004, a special Grand Jury returned an indictment charging Latchin with making false statements in connection with his application for U.S. citizenship (Count One). On December 1, 2004, the special Grand Jury returned a superseding indictment adding charges of acting as an unregistered foreign agent (Count Three) and conspiring to act as an unregistered foreign agent (Count Two), both in violation of 18 U.S.C. § 951(a).

## DISCUSSION

Latchin now seeks dismissal of Count Three of the superseding indictment on the grounds that it is vague, duplicitous, and barred in part by the statute of limitations. In the alternative, Latchin asks for a bill of particulars under FED. R. CRIM. P. 7(f).

I.  **Motion to Dismiss**

   A.  **Vagueness**

An indictment is sufficient if it (1) states the elements of the offense charged; (2) fairly informs the defendant of the nature of the charge so that he may prepare a defense; and (3) enables him to plead an acquittal or conviction as a bar against future prosecutions for the same

3

offense. *United States v. Ramsey*, 406 F.3d 426, 429 (7th Cir. 2005). In setting forth an offense, an indictment "should generally 'track' the words of the statute itself, 'so long as those words expressly set forth all the elements necessary to constitute the offense intended to be punished.'" *United States v. Anderson*, 280 F.3d 1121, 1124 (7th Cir. 2002) (quoting *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000)).

Count Three charges Latchin with knowingly acting as an unregistered agent of the Iraqi government in violation of 18 U.S.C. § 951(a). Section 951(a) provides, in relevant part:

> Whoever, other than a diplomatic or consular officer or attaché, acts in the United States as an agent of a foreign government without prior notification to the Attorney General . . . shall be fined under this title or imprisoned not more than ten years, or both.

18 U.S.C. § 951(a). The superseding indictment tracks the language of the statute and identifies the different ways in which Latchin violated it, including moving to Illinois to become a sleeper agent of the IIS and the Iraqi government; obtaining U.S. citizenship; communicating with IIS intelligence officers while in Illinois; traveling to overseas locations to meet with IIS intelligence officers; and receiving payment from the IIS for his intelligence services. (SI, Count 3 ¶¶ 1, 2.)

Latchin nonetheless argues that Count Three is vague because it does not provide the dates of his alleged communications, the identities of the IIS officers with whom he met or communicated, or the dates he traveled overseas and/or received payment.[2] (Def. Mem., at 4-5.)[3] Latchin does not cite any support for this argument, and the court notes that "[f]acial sufficiency is not a high hurdle. Indictments need not exhaustively describe the facts surrounding a crime's commission nor provide lengthy explanations of the elements of the offense." *United States v. Bates*, 96 F.3d 964, 970 (7th Cir. 1996). In this case, the court concludes that the indictment fairly

---

[2] The court notes that though Count Three does not specify the dates Latchin traveled overseas, Count Two does provide that information.

[3] Defendant's Motion to Dismiss Count Three of the Superseding Indictment is cited as "Def. Mem., at __."

notifies Latchin of the nature of the charge against him and that there is no basis for dismissing Count Three on vagueness grounds. See, e.g., FED. R. CRIM. P. 7(c) ("The indictment or the information shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged.")

### B. Duplicity

Latchin also argues that Count Three is void for duplicity. "Duplicity" – i.e., "the joining of two or more offenses in a single count" – is prohibited by FED. R. CRIM. P. 8, which requires "a separate count for each offense." *United States v. Buchmeier*, 255 F.3d 415, 421 (7th Cir. 2001). As the *Buchmeier* court explained,

> [t]he overall vice of duplicity is that the jury cannot in a general verdict render its finding on each offense, making it difficult to determine whether a conviction rests on only one of the offenses or both. Additionally, we have explained that a duplicitous indictment may expose a defendant to other adverse effects including improper notice of the charges against him, prejudice in the shaping of evidentiary rulings, in sentencing, in limiting review on appeal, in exposure to double jeopardy, and of course the danger that a conviction will result from less than a unanimous verdict as to each separate offense.

*Id.* at 425.

Latchin claims that Count Three improperly combines the multiple acts he purportedly took as an unregistered agent, each of which should be charged in a separate count. (Def. Mem., at 3.) The government responds that it has alleged just one instance of illegal conduct – acting as an unregistered agent – that was merely executed in different ways. (Gov't Resp., at 2-3.)[4] "[A]n indictment charging multiple acts in the same count, each of which could be charged as a separate offense, may not be duplicitous where these acts comprise a continuing course of conduct that constitutes a single offense." *Buchmeier*, 255 F.3d at 421. Latchin insists that "the charge in Count Three is not a continuing offense" (Def. Mem., at 6); he cannot dispute, however, that Count

---

[4] The Government's Response to Defendant's Motion to Dismiss Count Three of the Superseding Indictment is cited as "Gov't Resp., at __."

5

Three alleges a common scheme to act as an unregistered agent, an offense he carried out in a variety of ways, such as communicating with IIS officials from within Illinois and traveling to overseas locations to meet with his IIS handlers. The mere fact that these activities occurred on numerous separate occasions does not render the charges duplicitous. *See United States v. Dumeisi*, No. 03 CR 664-1, 2003 WL 22757747, at *2 (N.D. Ill. Nov. 20, 2003) (citing *United States v. Folks*, 236 F.3d 384, 391 (7th Cir. 2001)) ("an indictment may properly include multiple factual scenarios" to establish a single charged offense").

### C. Statute of Limitations

Latchin finally argues that Count Three "includes at least two alleged acts that are barred by the statute of limitations." (Def. Mem., at 6.) The parties agree that the statute of limitations for a § 951(a) action is five years. *See* 18 U.S.C. § 3282 ("no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is instituted . . . within five years next after such offense shall have been committed.") Latchin notes that his acts of moving to Illinois in 1993 and becoming a U.S. citizen on August 16, 1999 both occurred more than five years before he was indicted on the § 951(a) charge on December 1, 2004. He also argues that "numerous acts that may be included in paragraphs 2(c) and 2(e) [regarding communications with IIS officials and payments for intelligence services] are also barred by the statute of limitations." (Def. Mem., at 7.)

In support of this argument, Latchin cites *Toussie v. United States*, 397 U.S. 112 (1970) and *United States v. Yashar*, 166 F.3d 873 (7th Cir. 1999). The defendant in *Toussie* was convicted of failing to register for the draft in violation of the Universal Military Training and Service Act, 50 U.S.C. § 453. 397 U.S. at 112. Under the applicable presidential proclamation, the defendant was required to register within five days of his eighteenth birthday, or sometime between June 23 and June 28, 1959. *Id.* at 113. He failed to do so and was indicted for the offense on May 3, 1967. The defendant moved to dismiss the indictment as barred by the five year statute of limitations,

6

arguing that his crime was complete in 1959 and could not be the subject of an indictment eight years later. *Id.* at 114. The government agreed that the crime was complete in 1959 but argued that it continued to be committed each day that the defendant did not register. The district court allowed the prosecution to proceed and the Second Circuit Court of Appeals affirmed the defendant's conviction. *Id.*

The Supreme Court reversed, however, finding that in light of the history of the various registration statutes, "we do not think the Act intended to treat continued failure to register as a renewal of the original crime or the repeated commission of new offenses"; rather the Act reaffirmed that "a man must register at a particular time and his failure to do so at that time is a single offense." *Id.* at 119. In reaching this conclusion, the Court noted that it found no congressional intent to create a continuing offense under the statute, and "no language in this Act that clearly contemplates a prolonged course of conduct." *Id.* at 120.

In *Yashar*, the defendant was charged with embezzling more than $5,000 from a local government agency that received more than $10,000 in federal funding, in violation of 18 U.S.C. § 666. 166 F.3d at 875. The defendant argued that the indictment was barred by the five year statute of limitations because the benefits he received within the limitations period did not meet the $5,000 statutory minimum. *Id.* The district court agreed and the government appealed. The Seventh Circuit first explained that "for offenses that are not continuing offenses under *Toussie*, the offense is committed and the limitations period begins to run once all elements of the offense are established, regardless of whether the defendant continues to engage in criminal conduct." *Id.* at 879-80. The court then noted that an offense is deemed to be "continuing" under the rationale of *Toussie* only when (a) "the explicit language of the substantive criminal statute compels such a conclusion," or (b) "the nature of the crime involved is such that Congress must assuredly have intended that it be treated as a continuing one." *Id.* at 875 (quoting *Toussie*, 397 U.S. at 115). The court stressed that "the active or passive nature of a defendant's actions has never been the

benchmark of a continuing offense under *Toussie*. Instead, . . . [i]f the statute describes an offense that by its nature continues after the elements have been met, then the offense is a continuing one regardless of the nature of defendant's actions beyond that point." *Id.* at 877.

In *Yashar*, the government conceded that § 666 is not a "continuing offense" as that term is defined in *Toussie*, but argued that the defendant's offense was "a 'continuing course of conduct' that straddles the limitations period. Because [the defendant's] conduct is permissibly charged as one offense and some conduct falls within the limitations period," the government argued, "there is no limitations problem." *Id.* at 876. The court disagreed and held that the limitations period started "when all elements of the crime [we]re first present"; that is, when "at least $5,000 in property was taken, and $10,000 in benefits received." *Id.* at 879-80. The court nonetheless found that dismissal was not appropriate because viewing the facts in a light most favorable to the government, it could not discern from the face of the indictment whether all of the elements of the offense had been met outside the five year limitations period. *Id.* at 880.

In this court's view, the fact that Latchin may have begun acting as an unregistered foreign agent outside the five-year limitations period does not preclude a charge against him for all acts taken within the limitations period. As Latchin himself acknowledges, each alleged act may support a separate charge, and "alleged violations occurring after December 1, 1999 are within the statute of limitations." (Def. Mem., at 6.) To the extent the government alleges that Latchin acted as an unregistered foreign agent when he traveled overseas and communicated with his IIS handlers on October 1, 2000, January 6, 2001, June 8 through July 26, 2001, July 28, 2001, March 14 through May 7, 2002, and July 14, 2002, the government may establish the elements of a § 951(a) offense solely by reference to post-limitations conduct and the charge is not time-barred.

In sum, Count Three of the superseding indictment is not vague, duplicitous, or untimely and Latchin's motion to dismiss is denied.

## II. Bill of Particulars

Anticipating this result, Latchin moves in the alternative for a bill of particulars. Rule 7(f) authorizes the court to order the government to produce a bill of particulars if the allegations of the indictment are inadequate to provide notice of the charges against a defendant. Under Rule 7(f), a court may order a bill of particulars if the indictment fails to provide notice of the charges sufficient to allow the defendant to prepare for trial. *United States v. Falcon*, 347 F.3d 1000, 1002 n.1 (7th Cir. 2003) (quoting *United States v. Fassnacht*, 332 F.3d 440, 446 (7th Cir. 2003)). Thus, the test for determining whether a motion for a bill of particulars should be granted is "whether the indictment sets forth the elements of the offense charged and sufficiently apprises the defendant of the charges to enable him to prepare for trial." *Fassnacht*, 332 F.3d at 446. Another court has explained that in determining whether to impose the requirement of a bill of particulars, the court may consider "the complexity of the charges, the clarity of the indictment, and the degree of discovery available to the defense . . . ." *United States v. Vasquez-Ruiz*, 136 F. Supp. 2d 941, 942 (N.D. Ill. 2001).

Latchin concedes that the government has produced a "large quantity of materials" regarding his case. (Def. Reply, at 4-5.)[5] It is well-established that a bill of particulars is not required where the defendant is able to obtain information necessary for his defense through other means, for example, pre-trial disclosure by the government of relevant documents. *Fassnacht*, 332 F.3d at 447 n. 2. Latchin observes, however, that based on a preliminary review of those documents, "the violations might consist of any one or more of several dozen telephone calls to or from three government witnesses and any one or more of nine trips overseas." (Def. Reply, at 5.) The court agrees that the government must specify the non-time-barred acts which form the basis

---

[5] Defendant's Reply on Motion to Dismiss Count Three of the Superseding Indictment is cited as "Def. Reply, at __."

9

of the charge in Count Three and therefore grants Latchin's motion for a bill of particulars in that regard.

## CONCLUSION

For the reasons stated above, Latchin's motions to dismiss (Docket No. 61) is denied but his motion for a bill of particulars is granted.

ENTER:

Dated: July 26, 2005

REBECCA R. PALLMEYER
United States District Judge